| | |
|---|---|
| GLEN ELLYN PHARMACY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MEDA PHARMACEUTICALS, INC., ) <br>     Defendant and Cross-Claimant, ) <br> ) <br> THE HAL LEWIS GROUP, ) <br>     Defendant and Cross-Defendant, ) <br> ) <br> and DOES 1-10, ) <br>     Defendants. ) <br> _____) <br> THE HAL LEWIS GROUP, INC., ) <br> ) <br>     Third Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTELLISPHERE, LLC d/b/a ) <br> PHARMACY TIMES, and SK & A ) <br> INFORMATION SERVICES, INC., ) <br> ) <br>     Third Party Defendants. ) | Judge Joan B. Gottschall <br><br> Case No. 09 C 4100 |

## **MEMORANDUM OPINION & ORDER**

Before the court are Third Party Defendant SK & A Information Services, Inc.'s ("SKA's") motion to dismiss Count V of the Hal Lewis Group's third party complaint and SKA's motion to strike the crossclaims filed by Intellisphere, LLC. For the reasons stated below, the court grants in part and denies in part the motion to dismiss Count V of the Hal Lewis complaint, denies the motion to strike Intellisphere, LLC's cross-complaint, and gives Intellisphere, LLC leave to file its cross-complaint *instanter*.

# I. BACKGROUND

Plaintiff Glen Ellyn Pharmacy, Inc. ("Glen Ellyn") originally filed suit against Meda Pharmaceuticals, Inc. ("Meda") in the Circuit Court of Cook County, and Meda removed the action to this court based on federal jurisdiction. Thereafter, Glen Ellyn amended its complaint to add the Hal Lewis Group, Inc. ("Hal Lewis") as an additional defendant. Glen Ellyn alleges that it received two unsolicited facsimile advertisements ("fax ads") for products and services relating to Meda's "Soma 250" product, and that Hal Lewis acted as Meda's agent in causing these fax ads to be sent. On information and belief, Glen Ellyn alleges the existence of a class of at least forty other businesses who also received unsolicited fax ads from Hal Lewis and Meda. The amended complaint states three counts: Count I alleges a violation of the Telephone Communications Privacy Act ("TCPA"), Count II alleges a violation of the Illinois Consumer Fraud Act ("Fraud Act"), and Count III states a claim for common law conversion.

Thereafter, Hal Lewis filed a third party complaint naming Intellisphere, LLC,[1] d/b/a/ Pharmacy Times ("Pharmacy Times") and SKA as defendants. In the complaint, Hal Lewis alleges that it entered into an agreement with Meda to provide advertising relating to Meda's Soma 250 product. At the request of Meda, Hal Lewis then attended a presentation by Pharmacy Times, during which presentation Pharmacy Times represented that it had a list of fax numbers for pharmacists and pharmacies that were willing to receive advertisements. Pharmacy Times had obtained those numbers from SKA, but neither Pharmacy Times nor SKA had obtained permission to send unsolicited advertisements to the owners of the fax numbers; in fact, according to Hal Lewis, SKA

---

[1] In its responsive pleadings, Intellisphere, LLC states that it is not the proper entity to the lawsuit, and instead names Pharmacy & Healthcare Communications LLC. As the "doing business as" entity remains Pharmacy Times, the court will use that name throughout for ease of reference.

actually knew that it did not have permission to send faxes to those numbers. In reliance upon Pharmacy Times' representation, Hal Lewis contracted with Pharmacy Times to transmit the ads relating to the Soma 250 product. The ads were sent to Glen Ellyn on May 5, 2009 and May 20, 2009 without its permission or consent.[2] In its third party complaint, Hal Lewis alleges five counts: Counts I-IV are brought exclusively against Pharmacy Times, while Count V is a claim for contribution against both Pharmacy Times and SKA in the event that Hal Lewis is found liable to Glen Ellyn. SKA has moved to dismiss Count V under Federal Rule of Civil Procedure 12(b)(6), claiming both that Illinois law precludes an intentional tortfeasor from seeking contribution and that the TCPA and federal common law do not recognize a right to contribution.

About four months after Hal Lewis filed its third party complaint, Pharmacy Times filed a cross-complaint against SKA.[3] Therein, Pharmacy Times accuses SKA of breach of contract, negligent misrepresentation, and intentional misrepresentation. Pharmacy Times further claims that SKA is estopped from denying that SKA was authorized to send fax ads to the numbers at issue, and it seeks contribution from SKA for any liability that might result from the proceedings with Hal Lewis. Pharmacy Times never sought or obtained leave to file its crossclaims, and SKA now moves to strike the pleading. In addition to raising a number of other objections, SKA argues that the disputes set forth are governed by a forum selection clause that would require Pharmacy Times to litigate in California. The court addresses each issue in turn.

---

[2] The actual ads were sent by yet another company—Odyssey Services—with whom SKA had contracted. Odyssey Services has not been made a party to this suit, although Pharmacy Times recently filed a motion seeking leave to file a third-party complaint against it.

[3] Meda has also filed a cross-complaint against Hal Lewis, but that pleading is not at issue here.

## II. LEGAL STANDARD

In reviewing a motion to dismiss brought pursuant to Rule 12(b)(6), the court accepts all well-pleaded facts in the complaint as true, views the facts in the light most favorable to the non-moving party, and draws reasonable inferences in that party's favor. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). But while "the bar to survive a motion to dismiss is not high, the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotation marks omitted)).

Although SKA's second motion nominally is a motion to strike, the court will evaluate the issue under Rule 15(a)—Pharmacy Times acknowledges that it should have sought leave before filing its cross-complaint, and the court requested supplemental briefing on the issue. The court will give leave to amend (and deny SKA's motion to strike) if "justice so requires," *see* Rule 15(a)(2), but "[j]ustice generally does not require such leave if a movant demonstrates 'undue delay, bad faith, or dilatory motive,' or if undue prejudice to the opposing party would result." *Vitrano v. United States*, 643 F.3d 229, 234 (7th Cir. 2011) (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)). Here, SKA argues that the crossclaims cannot survive a motion to dismiss; if true, this also would be a proper basis for granting SKA's motion. *See Arlin–Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011) ("[A] district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)).

# III. ANALYSIS

## A. Count V of Hal Lewis's Third Party Complaint

### 1. Contribution Based on Federal Law

SKA moves to dismiss Hal Lewis's claim for contribution in part based upon its argument that no right to contribution exists under either the TCPA or federal common law. The court agrees. As a preliminary matter, this question is governed by federal, not state, law. *Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2011 WL 2637227, at *2 (N.D. Ill. July 6, 2011) ("[T]hat states are permitted to hear TCPA claims does not mean that state contribution laws apply to such claims. The fact remains that [the defendant] seeks contribution for damages resulting from the violation of a federal statute. Consequently, federal law applies to its claims."); *see Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir. 1985) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law."). And while Hal Lewis points out that the TCPA is silent as to contribution, "this observation clearly does little to show that Congress has created an affirmative cause of action for contribution." *Garrett*, 2011 WL 2637227, at *1; *see also Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005) ("Courts have become reluctant to recognize a right of contribution as a matter either of federal common law or of statute."). Instead, the TCPA itself strongly suggests that Congress never intended to create such a right. For instance, the TCPA contemplates treble damages, *see* 47 U.S.C. § 227(b)(3), which indicates that Congress had no intent to include a right of contribution. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639-40 (1981) (in the context of the Clayton and

5

Sherman Acts, noting that the existence of a treble damages provision "reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers"; this, combined with the "absence of any reference to contribution in the legislative history" led the Supreme Court to conclude that "Congress neither expressly nor implicitly intended to create a right to contribution"). Likewise, the TCPA's remedial scheme—whereby both private and government actors enforce the law—provides some support to the conclusion that Congress intended to limit the remedies to those expressly described. *See Nw. Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 93-94 (1981) ("The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies. It is, of course, not within our competence as federal judges to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized by Congress."). Finally, this court has not identified (nor has Hal Lewis cited) any support for the notion of contribution in the TCPA's legislative history. *See, e.g.*, S. Rep. No. 109-76 (2005); S. Rep. No. 102-178 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968; H.R. Rep. 102-317 (1991).

So there is no right to contribution under the TCPA.[4] The question then becomes whether the so-called "federal common law" can be expanded to provide such a right. *See Texas Indus.*, 451 U.S. at 638 ("[A] right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to

---

[4] Hal Lewis's cited authority is not to the contrary. *See Locklear Elec., Inc. v. Lay*, No. 09 C 0531, 2009 WL 4678428, at *1 (S.D. Ill. Dec.7, 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953 (N.D. Ill. Mar. 18, 2008); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 0949, 2006 WL 2666289, at *1 (N.D. Ill. Sept.14, 2006). In fact, as Judge Bucklo noted in *Garrett*—a case in which the party seeking contribution was represented by the same counsel that now represents Hal Lewis—none of these cases address the question at hand. *See Garrett*, 2011 WL 2637227, at *1.

fashion a federal common law of contribution."). The court has been provided with no basis for expanding the common law in this manner; Hal Lewis only argues that "the underlying purpose" of the TCPA would be furthered by such an expansion, but this is insufficient. *See Texas Indus.*, 451 U.S. at 640 (noting that such instances "are 'few and restricted,' and fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law") (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964) and citing *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963)). As a right of contribution in the TCPA is not necessary to protect uniquely federal interests, nor has the court been given the power to develop substantive law, the court declines to expand the federal common law in this way. Thus, the court grants SKA's motion to dismiss to the extent that Hal Lewis seeks contribution for liability stemming from violations of the TCPA.

**2. Contribution Based on Illinois Law**

Next, the court addresses Hal Lewis's right to contribution based upon two state law claims: the Illinois Consumer Fraud Act ("the Fraud Act"), and the tort of conversion. SKA argues that the Illinois Joint Tortfeasor Contribution Act (the "Contribution Act"), 740 Ill. Comp. Stat. 100/2, precludes an intentional tortfeasor from seeking contribution, and that since both of these causes of action have an intent element, SKA cannot be liable for contribution. On its face, the Contribution Act contains no such limitation—it merely provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them." 740 Ill. Comp. Stat. 100/2(a). In interpreting the

statute, however, Illinois courts have held that the phrase "subject to liability in tort" excludes intentionally tortious conduct. *See Ziarko v. Soo Line R.R.*, 641 N.E.2d 402, 404 (Ill. 1994) ("Although the Act does not define the scope of the terms 'subject to liability in tort,' this court has held that the phrase is intended to exclude intentionally tortious conduct."). Thus, where intent is a required element of a cause of action, a liable tortfeasor will not be able to prevail in an action for contribution.

The court addresses the easy question first: conversion is indisputably an intentional tort in Illinois. *See Loman v. Freeman*, 890 N.E.2d 446, 462 (Ill. 2008) ("The essence of a claim for conversion is an allegation that the defendant engaged in an intentional, wrongful act."); *Kerrigan v. Am. Orthodontics Corp.*, 960 F.2d 43, 45 (7th Cir. 1992) ("Conversion is an intentional tort."). Consequently, Hal Lewis can have no right to contribution under the Contribution Act.

The Fraud Act is trickier. To state a claim under the Fraud Act, "a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 713 N.E.2d 543, 552 (Ill. 1999). But despite the plain language of that formulation, "a violation of the Consumer Fraud Act may be based on an innocent or negligent misrepresentation as well as one that is intentional." *Carl Sandburg Vill. Condo. Ass'n v. First Condo. Dev., Inc.*, 557 N.E.2d 246, 250 (Ill. App. Ct. 1990); *see Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 350 (7th Cir. 2003) ("Illinois courts have interpreted the Consumer Fraud Act in a manner such that plaintiffs do not have to prove a defendant intended to deceive them."). Here, Glen Ellyn's amended

8

complaint does not seek to establish that Hal Lewis intentionally practiced a deceptive act.[5] Instead, the complaint sets out facts that could be consistent with either intentional or negligent conduct. Because Glen Ellyn could establish Hal Lewis's liability under the Fraud Act without having to establish that Hal Lewis intentionally deceived Glen Ellyn, SKA could also be liable to Hal Lewis under the Contribution Act. The motion to dismiss on this basis must be denied. Therefore, SKA's motion to dismiss Count V of Hal Lewis's third party complaint is granted in part and denied in part.

**B.    SKA's Motion to Strike Pharmacy Times' Crossclaim**

SKA originally objected to Pharmacy Times' cross-complaint based upon Pharmacy Times' failure to seek leave of court under Rule 15 prior to filing. SKA's "motion to strike" requested that the court treat Pharmacy Times' cross-complaint as a motion for leave to file and deny that motion. Pharmacy Times then filed a substantive response, arguing *inter alia* that the pleading was "timely, not unduly prejudicial, and not futile" and seeking leave to file the cross-complaint *instanter*. In light of that response, which addressed the same issues that would have been raised in a motion for leave to file, this court re-fashioned SKA's reply as a response brief and permitted Pharmacy Times a reply.[6]

SKA's response raises a number of issues. First, SKA argues that the court should refuse leave to file on the basis of futility, because (1) the cross-complaint is governed by a forum selection clause, which dictates that the claims must be brought in

---

[5]    While SKA claims that the court ruled that Hal Lewis acted with intent to deceive, this argument misapprehends the scope of the court's order. In denying Hal Lewis's motion to dismiss the complaint, the court merely reiterated an earlier holding that "an intent to treat the plaintiff unfairly need not be pled explicitly" for purposes of a Fraud Act claim. (*See* Order at 2, ECF No. 106.)

[6]    In other words, the court treats Pharmacy Times' response (*see* ECF No. 135) as a motion for leave to file its cross-complaint, SKA's surreply (*see* ECF No. 146) as SKA's response, and Pharmacy Times' surresponse (*see* ECF No. 147) as its reply.

9

California, and (2) for the same reasons SKA argued with respect to the Hal Lewis complaint, Pharmacy Times' contribution claim could not survive a Rule 12(b)(6) motion to dismiss. Next, it claims that it would be unduly prejudiced if the court granted leave to amend. Finally, it argues that it is not an indispensable party under Rule 19.

### 1. The Forum Selection Clause

The court first turns to the forum selection clause. Pharmacy Times and SKA agreed to conduct their business pursuant to SKA's Service Provider Agreement ("the Agreement"), which states in relevant part:

> This agreement is entered into in the State of California and its provisions shall be construed in accordance with the laws of California. In addition, any dispute, controversy or claim arising out of or in connection with this agreement and any subsequent amendments, including its valid termination or expiration, binding effect, interpretation, performance, breach or termination, and tort claims shall be referred to courts of competent jurisdiction located in Orange County, California.[7]

Before the court can evaluate the validity of the forum selection clause, it must determine which law to apply. Although federal law applies when a party seeks transfer under 28 U.S.C. § 1404(a), *see IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006), here the court in effect addresses a potential dismissal under Rule 12(b)(3).[8] In the past, the Seventh Circuit reserved judgment on this question, *see*

---

[7] Because the forum selection clause is considered under Rule 12(b)(3), this court is not "obligated to limit its consideration to the pleadings," and it may consider the text of the Agreement. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

[8] As the court concludes that dismissal would be inappropriate for other reasons, it does not address the arguable conflict in Seventh Circuit decisions regarding whether dismissal under Rule 12(b)(3) is appropriate on the basis of a forum selection clause. *Compare In re LimitNone, LLC*, 551 F.3d 572, 575-76 (7th Cir. 2008) (holding that venue may be proper in a particular forum notwithstanding the fact that a forum selection clause exists which specifies a different venue, and noting that in such circumstances transfer must be made under 28 U.S.C. § 1404, not 28 U.S.C. § 1406) *with Muzumdar*, 438 F.3d at 760 (upholding a Rule 12(b)(3) dismissal where a district court had concluded that venue was improper based upon the existence of a mandatory forum selection clause); *see Am. Plastics Tech., Inc. v. Festo Corp.*, No. 11 CV 3290, 2011 WL 4686462, at *2 (N.D. Ill. Oct. 4, 2011) (noting that post-*LimitNone*, "at least one court has questioned whether a forum selection clause can render venue 'improper' under Rule 12(b)(3)")

*Aliano Bros.*, 437 F.3d at 611 (taking "no position on whether federal or state law governs the issue of [forum selection clause] validity when there is no transfer order"), but subsequent developments establish that "the validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute." *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) (citing *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421 (7th Cir. 2007)); *see E&J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006) ("[T]he contract clearly contains a California choice-of-law clause; thus, the validity of the forum selection clause should be decided by California law, as the law of the contract."); *Macey & Aleman v. Simmons*, No. 10 C 6646, 2011 WL 1456762, at *2 (N.D. Ill. Apr. 14, 2011) (same).

So California law would apply, but the court faces another wrinkle: neither party argues for the application of California law. In fact, in its cross-complaint Pharmacy Times cites to the Illinois Joint Tortfeasor Act for its own contribution claim, and in its briefing for this motion it cites to Illinois law in arguing that its breach of contract, negligent misrepresentation, intentional misrepresentation, promissory estoppel, and contribution claims would survive a motion to dismiss. (*See* ECF No. 135.) However, Pharmacy Times applies federal law in evaluating the validity of the forum selection clause. For its part, SKA incorporates by reference the arguments it made with respect to contribution against Hal Lewis; these claims depended entirely upon federal or Illinois law. The California choice-of-law provision is there in the Agreement plain as day, but despite SKA's vehement argument that the forum selection clause should apply, it makes

---

(citing *Schwarz v. Sellers Markets, Inc.*, --- F. Supp. 2d ----, No. 11 C 0501, 2011 WL 3921425, at *8 (N.D. Ill. Sept. 7, 2011)).

no argument with respect to the choice-of-law provision, nor does it cite to California law in arguing for the validity of the forum selection clause. Instead, it relies exclusively upon federal law.

The court can only conclude that the parties waived the application of California law, at least with respect to the question of the forum selection clause's validity. *See Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 251-52 (7th Cir. 1996) (citing *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990)). Thus, the court will apply federal law to the question, but notes that in the end, it is a distinction without much difference, since Pharmacy Times prevails under even the more demanding federal standard. *See Aliano Bros.*, 437 F.3d at 611 (noting that "[a]t the black-letter level," Illinois and federal law are materially the same, but in practice "Illinois law on validity is more lenient"); *Trident Labs, Inc. v. Merrill Lynch Comm. Fin. Corp.*, 132 Cal. Rptr. 3d 551, 557-58 (Cal. Ct. App. 2011) (noting that California law on forum selection clause validity is much the same as Illinois law).

Before the court gets into the issue of enforceability, it must decide whether the forum selection clause is mandatory or permissive. The clause states that "any dispute, controversy, or claim arising out of or in connection with this agreement . . . shall be referred to courts of competent jurisdiction located in Orange County, California." (*See* Agreement at 2, ECF No. 146-2.) In other words, it encompasses a broad range of claims "arising out of or in connection" to the Agreement, and provides that all of those claims "shall" be referred to a particular venue—a court of competent jurisdiction, be it state or federal, in Orange County. Because the Agreement specifies venue in mandatory

language, the forum selection clause is mandatory.[9] *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006) ("[W]here venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.") (citations omitted).

This mandatory forum selection provision "is presumptively valid and enforceable unless (1) '[its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement . . . would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.'" *AAR Int'l, Inc. v. Nimelias Enters.*, 250 F.3d 510, 525 (7th Cir. 2001) (quoting *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (alterations in original). But as the Seventh Circuit has repeatedly noted, the presumption of validity is overcome when "'there is inconvenience to some third party . . . or to the judicial system itself,' as distinct from inconvenience to the party seeking transfer." *Aliano Bros.*, 437 F.3d at 613; *see Abbott Labs.*, 476 F.3d at 423 ("[O]rdinarily the parties' contractual choice of forum should be overridden only if choice would impose significant costs on third parties or on the judicial system."); *Nw. Nat'l*, 916 F.2d at 378 ("If there is inconvenience to some third party of which that third party may not even be aware, or to the judicial system

---

[9] Even if the court were to conclude that the clause was permissive, the outcome would remain the same. The Seventh Circuit has indicated that the traditional *forum non conveniens* analysis applies when a standard permissive clause is used, *see AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (noting that "[a]t least one circuit has held that the traditional *forum non conveniens* analysis (rather than the stricter scrutiny required by *Bremen*) applies in cases involving permissive forum selection clauses . . . . [and t]his conclusion seems reasonable") and even under the *Bremen* standard, the court concludes that the cross-complaint must remain here. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

itself, then either party to the suit is free to move for a change of venue."); *Pegasus Transp., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574, 577 (N.D. Ill. 1993) (declining to enforce a forum selection clause in part because "simultaneously adjudicating identical claims in both federal and state court 'would be a pointless waste of judicial resources.'") (quoting *Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992)).

Although the claims that SKA seeks to litigate in California are not identical to the claims brought by Glen Ellyn, Meda, and Hal Lewis, Pharmacy Times' claims are closely related to and intertwined with those claims. In addition, some of this court's rulings will inform (and perhaps dictate) the outcome of Pharmacy Times' claims, because (as explained below in subsection (b)(2)) SKA's contribution liability to Pharmacy Times potentially depends not only upon the outcome of Glen Ellyn's Fraud Act claim, but upon the outcome of the breach of contract, misrepresentation, and estoppel claims that Hal Lewis has asserted against Pharmacy Times. Nor does the court deprive SKA of the expertise of the California state courts by keeping the Pharmacy Times crossclaims here. The forum selection clause places venue in *any* court of competent jurisdiction in Orange County, and depending upon the amount in controversy, Pharmacy Times could have filed its cross-claims in the Southern Division of the Central District of California under 28 U.S.C. § 1332. Finally, it bears noting that SKA remains a party to this litigation regardless of what the court does with respect to Pharmacy Times' crossclaims, because the court denies in part SKA's motion to dismiss Hal Lewis's third party complaint. As a practical matter, then, it will be more cost-effective and efficient for SKA to defend the claims against it here.

In short, to ask another court to address claims that are dependent upon and closely related to claims that have been pending before this court for over two years would be to sanction the waste of scarce judicial resources. Under these circumstances, the forum selection clause is not enforceable, and the court therefore does not need to reach the issue of whether SKA is an "indispensable party" for purposes of Rule 19.

**2. Dismissal under Rule 12(b)(6)**

SKA next argues that a single count of Pharmacy Times' cross-complaint—Count V, which seeks contribution[10]—cannot survive a motion to dismiss under Rule 12(b)(6), because there is neither a right to contribution under the TCPA nor a federal common law right to such contribution. As the court discussed with respect to the Hal Lewis third party complaint, SKA is correct, but that fact does not help SKA here.

SKA misapprehends the nature of the cross-complaint. Hal Lewis seeks contribution from SKA for whatever liability Hal Lewis has based upon the *Glen Ellyn* complaint; in other words, Hal Lewis seeks contribution for its potential liability based on the TCPA, the Fraud Act, and for conversion. Pharmacy Times, by contrast, seeks contribution from SKA for whatever liability Pharmacy Times has to Hal Lewis based upon *Hal Lewis's* third party complaint; this means that Pharmacy Times not only seeks contribution for whatever Fraud Act liability Hal Lewis can pass on to it (if any), but also based upon its potential liability for breach of contract, negligent misrepresentation, intentional misrepresentation, and promissory estoppel. Putting aside whether (1) California or Illinois law governs these claims, (2) these claims have any merit, and (3) whether a right to contribution lies for any of these claims, the important point is simply

---

[10] SKA states in its brief that Pharmacy Times indemnified SKA in the Agreement, and further notes that the Agreement expressly states that SKA made no warranties, but it has not moved to dismiss based on these provisions and so the court does not address them.

15

this: SKA has not established that dismissal would be proper under Rule 12(b)(6). The court cannot conclude that Pharmacy Times' proposed cross-complaint would be futile.

### 3. Prejudice

Finally, the court must evaluate whether SKA will be prejudiced should the court grant Pharmacy Times leave to file the cross-complaint. SKA does not identify any particular prejudice that it would suffer by virtue of this court's decision to grant leave; instead, it claims that Pharmacy Times did not meet its burden "in showing that no prejudice will result to the non-moving party." *See King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994). The court disagrees. At worst, according to SKA's own math, Pharmacy Times delayed seeking leave of court by seventy-eight days. Of course, "delay alone will not generally justify denying a motion to amend a pleading absent a showing of prejudice from the delay." *King*, 26 F.3d at 723. And as Pharmacy Times points out, SKA has been an active party in the litigation for as long as Pharmacy Times has been a participant. Without any particularized harm identified, the court cannot see any prejudice to SKA. The court will not deny leave to file on this basis.

## III. CONCLUSION

SKA's motion to dismiss Count V of Hal Lewis's third party complaint is granted in part and denied in part: Hal Lewis can assert no right to contribution under the TCPA or for conversion, but it may be able to seek contribution from SKA in the event that Glen Ellyn is liable under the Fraud Act. SKA's motion to strike Pharmacy Times' cross-complaint is denied; Pharmacy Times' request to file its cross-complaint *instanter* is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 9, 2011