# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GLEN ELLYN PHARMACY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MEDA PHARMACEUTICALS, INC., | ) |
|     Defendant and Cross-Claimant, | ) |
| | ) |
| THE HAL LEWIS GROUP, | ) |
|     Defendant and Cross-Defendant, | ) |
| | ) |
| and DOES 1-10, | ) |
|     Defendants. | ) |
| THE HAL LEWIS GROUP, INC., | ) |
| | ) |
| Third Party Plaintiff, | ) |
| | ) |
| v. | )    Judge Joan B. Gottschall |
| | ) |
| INTELLISPHERE, LLC d/b/a | )    Case No. 09 C 4100 |
| PHARMACY TIMES, and SK&A | ) |
| INFORMATION SERVICES, INC., | ) |
| | ) |
| Third Party Defendants. | ) |
| INTELLISPHERE, LLC d/b/a | ) |
| PHARMACY TIMES, | ) |
| | ) |
| Third Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ODYSSEY SERVICES, INC., | ) |
| | ) |
| Third Party Defendant. | ) |

# MEMORANDUM OPINION & ORDER

Before the court is Third-Party Defendant Odyssey Services, Inc.'s ("Odyssey's") motion to dismiss the third-party complaint of Intellisphere, LLC,[1] d/b/a Pharmacy Times ("Pharmacy Times"). For the reasons stated below, the court denies the motion.

## I. BACKGROUND

As this court has already explained the somewhat convoluted posture of this case in greater detail elsewhere, *see Glen Ellyn Pharmacy, Inc. v. Meda Pharm., Inc.*, No. 09 C 4100, 2011 WL 6156800 (N.D. Ill. Dec. 9, 2011), the court will provide only a brief overview here. Plaintiff Glen Ellyn Pharmacy, Inc. ("Glen Ellyn") filed suit against Meda Pharmaceuticals, Inc. ("Meda") alleging that Glen Ellyn received two unsolicited facsimile advertisements for products and services relating to Meda's "Soma 250" product. Glen Ellyn also named the Hal Lewis Group, Inc. ("Hal Lewis") as a defendant, claiming that Hal Lewis acted as Meda's agent in causing the faxes to be sent. Hal Lewis, in turn, filed a third-party complaint against Pharmacy Times and SK&A Information Services, Inc. ("SK&A"), stating that it sent faxes only to those numbers that Pharmacy Times claimed to have received from SK&A for pharmacists and pharmacies that agreed to receive advertisements. Pharmacy Times then filed its own cross-complaint against SK&A, accusing SK&A of, *inter alia*, breach of contract, negligent misrepresentation, and intentional misrepresentation. The faxes themselves were sent by Odyssey, and Pharmacy Times filed yet another third-party complaint against Odyssey for breach of contract and contribution.

---

[1] In its responsive pleadings, Intellisphere, LLC states that it is not the proper party to be named in the lawsuit, and instead names Pharmacy & Healthcare Communications LLC. As the "doing business as" entity remains Pharmacy Times, the court will use that name throughout for ease of reference.

It is this last complaint against Odyssey that is at issue. Pharmacy Times alleges that it retained SK&A to assist it in complying with Meda's request, and that SK&A represented to Pharmacy Times that it had a list of pharmacies that had provided express permission for SK&A to send faxes to them. According to Pharmacy Times, after it began talks with SK&A, SK&A sent to Pharmacy Times both a "Service Provider Agreement" from SK&A and an "End User Service Agreement" from a company called Odyssey. Pharmacy Times signed both agreements; the End User Service Agreement ("the Odyssey Agreement") is attached to the complaint.[2] Pharmacy Times asked SK&A to add legally compliant "opt-out" language to the Soma 250 fax, and SK&A subcontracted with Odyssey to do so. Odyssey provided at least part of the opt-out language for the Soma 250 fax, and oversaw the entire opt-out process. But according to Glen Ellyn's complaint, Glen Ellyn had not consented to receive these faxes, and the faxes did not contain legally compliant opt-out language. Thus, Pharmacy Times now alleges that Odyssey breached the Odyssey Agreement by "failing to perform facsimile broadcasting services, including providing opt-out language and overseeing the campaign's opt-out process in full compliance with federal and state laws." Pharmacy Times also seeks contribution from Odyssey in the event that Pharmacy Times ends up being liable to Hal Lewis.

Odyssey has moved to dismiss, arguing that the Odyssey Agreement (1) contains a forum selection clause that requires this case to be brought in New Jersey, (2) dictates that Pharmacy Times is obliged to indemnify Odyssey for these claims, and (3) requires

---

[2] Pharmacy Times initially filed an incorrect exhibit, but this court granted leave to substitute that exhibit with the correct exhibit, which is available at ECF No. 180-1.

3

Pharmacy Times to bear sole responsibility for using Odyssey's services in accordance with all applicable laws. The court addresses each issue in turn.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the defendant may seek to dismiss the case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). But although Federal Rule of Civil Procedure 8(a) requires the complaint to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that while Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

## III. ANALYSIS

### A. The Forum Selection Clause

The court first turns to the forum selection clause. Pharmacy Times and Odyssey agreed to conduct their business pursuant to the Odyssey Agreement, which states in relevant part:

> This Agreement shall be interpreted and governed by the laws of the State of New Jersey without regard to its rules governing conflicts of law, and the parties agree to submit to the exclusive jurisdiction of the state or federal courts located in or with responsibility for Monmouth County, New Jersey, to resolve any disputes arising hereunder.

The court addressed a similar forum selection clause in its earlier opinion. *See Glen Ellyn Pharmacy, Inc.*, 2011 WL 6156800, at *4-7. There, the court noted that in the Seventh Circuit, the validity of a forum-selection clause depends upon the law of the jurisdiction whose rules govern the dispute. *Id.* (citing *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008)). But because the parties to the earlier dispute (SK&A and Pharmacy Times) had not attempted to apply their California choice-of-law provision, the court applied federal law, and concluded that the presumption of validity had been overcome based on the inconvenience to the judicial system. *See id.* at *6-7 (citations omitted). While the court agreed that the claims SK&A sought to litigate in California were not identical to the claims brought by Glen Ellyn and others in federal court, the claims were "closely related" and "intertwined." *Id.* Moreover, the court noted that the rulings in its federal case would inform, and arguably dictate, the outcome of some of SK&A's claims. Consequently, this court concluded that "to ask another court to address claims that are dependent upon and closely related to claims that have been pending before this court for over two years would be to sanction the waste of scarce judicial resources," and declined to enforce the forum selection clause.

In the instant case, regardless of whether this court applies federal or New Jersey law, the court reaches the same conclusion. New Jersey courts do not enforce forum selection clauses if they "violate the strong public policy of the local public forum." *See McNeill v. Zoref*, 687 A.2d 1052, 1056-57 (N.J. Super. App. Div. 1997). One such public policy is the "entire controversy doctrine," which dictates that courts should strive to

5

resolve "all claims against all potential defendants in one encompassing litigation." *Id.* (citing *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169 (N.J. 1989)). This policy exists "(1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." *Id.* (citations omitted); *see also Sparwick Contracting, Inc. v. Tomasco Corp.*, 761 A.2d 90, 96 (N.J. Super. App. Div. 2000) ("New Jersey recognizes the validity of forum selection clauses, but allows a court to decline to enforce such a provision in a particular instance if, *inter alia*, enforcement would seriously inconvenience trial."). Thus, for the same reasons the court declined to enforce the forum selection clause in its earlier opinion, the court declines to enforce the forum selection clause at issue here.

**B.     Breach of Contract (Count I) and Contribution (Count II)**

In Count I, Pharmacy Times brings a claim for breach of contract against Odyssey, alleging that "Odyssey breached the Odyssey Agreement by failing to perform facsimile broadcasting services, including providing opt-out language and overseeing the campaign's opt-out process in full compliance with federal and state laws." (Third-Party Compl. ¶ 36, ECF No. 157.) Odyssey now argues that Pharmacy Times cannot state a claim for breach of contract, because the Odyssey Agreement requires Pharmacy Times—*not* Odyssey—to use Odyssey's services in compliance with all applicable laws: in fact, the Odyssey Agreement specifically states that it is the "sole responsibility of [Pharmacy Times] to use the Services in accordance with all applicable local, state, federal and foreign laws and regulations." (Odyssey Agmt. § 5.1.) Odyssey also argues

that the Federal Communications Commission has limited liability to "only those fax broadcasters who are closely involved in the transmission of the fax," and that Odyssey was not so closely involved in broadcasting the Soma 250 ads that it should be held liable for violating the TCPA. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 68 Fed. Reg. 44144, 44169 (July 25, 2003). To the extent that Odyssey's liability was unclear under the TCPA, Odyssey claims that the intent of the contractual language was to shift the risk to Pharmacy Times.

As to Count II, in which Pharmacy Times seeks contribution from Odyssey, Odyssey argues that the terms of the Odyssey Agreement require Pharmacy Times to indemnify Odyssey for "any and all claims, damages, liabilities, costs and expenses . . . arising out of (i) [Pharmacy Times'] use of the Services or (ii) [Pharmacy Times'] violation of any laws or regulations respecting the Services." (Odyssey Agmt. § 5.2.) Because Pharmacy Times' claim for contribution "arise[s] from its use of Odyssey's services," Odyssey claims that Pharmacy Times is in effect attempting to get contribution for the very claim on which Pharmacy Times is required to indemnify Odyssey. This is impermissible under New Jersey law. *See* N.J. Stat. Ann. 2A:53A-3 (providing that "no person shall be entitled to recover contribution under [the joint tortfeasor] act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought").

Pharmacy Times does not argue that Odyssey's interpretation of the contractual language is incorrect. Instead, it claims that the Odyssey Agreement is unconscionable, rendering the contract unenforceable. In New Jersey, the unconscionability inquiry is divided into two parts: unfairness in the formation of the contract, or "procedural

7

unconscionability," and excessively disproportionate terms, or "substantive unconscionability." *See Estate of Cohen ex rel. Perelman v. Booth Computers*, 22 A.3d 991, 1005-06 (N.J. Super. App. Div. 2011) (citations omitted). These concepts are applied flexibly, and there is no set quota for how much of each "type" of unconscionability is needed. Instead, the court conducts a highly fact-sensitive examination. *See id.*; *Moore v. Woman to Woman Obstetrics & Gynecology*, L.L.C., 3 A.3d 535, 540 (N.J. Super. App. Div. 2010). As contracts of adhesion invariably evince aspects of procedural unconscionability, the focus tends to shift toward substantive unconscionability. In any event, the court will use a sliding scale analysis, focusing on both the way in which the contract was formed and whether enforcement of the contract implicates matters of public interest. *See Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006); *Moore*, 3 A.3d at 540 (citing *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 687 n.10 (N.J. 2010)). The court first analyzes the Odyssey Agreement for procedural unconscionability.[3]

1. Procedural Unconscionability

To analyze whether a contract is procedurally unconscionable, courts consider factors relevant to fairness in the formation of the contract, such as "age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Muhammad v. Cnty. Bank*, 912 A.2d 88, 96 (N.J. 2006). Pharmacy Times recounts the circumstances

---

[3] Before the court determines whether a contract is unconscionable, it generally must determine whether the contract is one of adhesion. *See Muhammad v. Cnty. Bank*, 912 A.2d 88, 96-97 (N.J. 2006) ("The determination that a contract is one of adhesion, however, 'is the beginning, not the end, of the inquiry.'") (citations omitted). In this motion to dismiss, however, Odyssey has not specifically argued that the contract was not one of adhesion. Given that the court must draw reasonable inferences in Pharmacy Times' favor, the court will assume that Pharmacy Times has overcome whatever threshold issue this presents and will limit its discussion to procedural and substantive unconscionability.

surrounding the contract's formation as follows: Pharmacy Times contacted SK&A in January 2009, unaware at that time that SK&A was working with Odyssey.[4] The Soma 250 fax broadcasts were scheduled to be sent on April 20, 2009 and May 5, 2009. On April 16, 2009—four days before the first fax broadcast was to be sent—SK&A sent both the "Service Provider Agreement" from SK&A and the Odyssey Agreement to a Pharmacy Times employee. Pharmacy Times claims that the Odyssey Agreement was a "take-it-or leave-it" contract, sent to someone who was not an officer or director of Pharmacy Times. Pharmacy Times further argues that SK&A failed to discuss the terms of the Odyssey Agreement with the employee to whom the Odyssey Agreement was sent, and did not give that employee adequate time to discuss the Odyssey Agreement with anyone else, including Pharmacy Times, its counsel, or anyone at Odyssey. Because the first fax broadcast was scheduled to take place in four days, Pharmacy Times claims that it had no ability to either demand changes in the Odyssey Agreement or to find an alternative service provider.

For its part, Odyssey points out that Pharmacy Times had contracted to send these faxes knowing that it did not have the capability to do so, and therefore Pharmacy Times put itself in this situation. Odyssey also notes that although the first fax broadcast was to take place on April 16, 2009, in fact the broadcast did not get sent until May 5, 2009—nearly three weeks later, which gave Pharmacy Times even more time to request changes to the contract terms. Odyssey further argues that in today's electronic age, a few days is more than ample for Pharmacy Times to negotiate terms, yet Pharmacy Times failed to

---

[4] Although these facts are set out in Pharmacy Times' response and not in its complaint, the facts are consistent with the allegations in the complaint and may be considered by this court. *See Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001) ("'A plaintiff need not put all of the essential facts in the complaint;' he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint.") (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)).

request a single modification to the Odyssey Agreement. Finally, Odyssey claims that Pharmacy Times is a sophisticated commercial entity that executed at least two other contracts in connection with the Soma 250 product alone.

The court agrees with Odyssey: there is little procedural unconscionability here. Although the court has assumed for the sake of argument that Pharmacy Times adequately alleged that this was a contract of adhesion, *see supra* note 4, that label is about the only factor that supports a finding of procedural unconscionability. As Odyssey points out, Pharmacy Times is a sophisticated commercial entity that executed numerous contracts in attempting to provide fax broadcasting services. The Odyssey Agreement itself is just three pages, and it is entirely legible. The provisions at issue here are clearly set off and labeled in capital letters. Moreover, each section contains no more than a few sentences, and those do not appear in any way to be "hidden or unduly complex."

With respect to Odyssey's bargaining tactics and the setting that existed during contract formation, Pharmacy Times has not alleged any fact to support its claim that Odyssey presented the contract as a "take-it-or-leave-it" option, and Pharmacy Times did not attempt to question or negotiate even a single term in the contract. The argument that Pharmacy Times had only four days in which to make changes is unavailing, given that Pharmacy Times did not even attempt to make any changes. *See, e.g.*, *Ohai v. Verizon Comm'cns, Inc.*, Civ. No. 05-729, 2005 WL 6563176, at \*5 (D.N.J. Oct. 28, 2005) (dismissing a claim for unconscionability in part because the plaintiff failed to show economic compulsion, failed to even attempt to alter the terms of the agreement, and had the opportunity and ability to read the plain language of the contract). Nor did Pharmacy Times attempt to find another service provider. In short, even taking into account those

facts that Pharmacy Times set out for the first time in its response to the motion to dismiss, the Odyssey Agreement does not appear to be the result of procedural unconscionability.

      2. <u>Substantive Unconscionability</u>

In addition to procedural unconscionability, Pharmacy Times argues that Sections 5.1, 5.2, 6.1, and 6.2 of the Odyssey Agreement are substantively unconscionable. These sections read, in relevant part:

> 5.0     LEGAL COMPLIANCE; INDEMNIFICATION
>
> 5.1     It is the sole responsibility of Customer to use the Services in accordance with all applicable local, state, federal and foreign laws and regulations. Breach by Customer of this section 5.1 is grounds for immediate suspension by Odyssey Services of Services and termination of this Agreement.
>
> 5.2     Customer shall indemnify and hold Odyssey Services harmless from and against any claims, damages, liabilities, costs and expenses (including, without limitation, reasonable attorney's fees and court costs) arising out of (i) Customer's use of the Services or (ii) Customer's violation of any laws or regulations respecting the Services (the "Claims").
>
> 6.0     DISCLAIMERS AND LIMITATION OF LIABLITY
>
> 6.1     Odyssey Services expressly disclaims any and all warranties, whether express or implied, relating to the Services, including but not limited to warranties of merchantability or fitness for a particular purpose. Odyssey Services's total liability for damages arising out of or relating to the Services or this Agreement, whether to Customer or any other party and regardless of the form of the action, is limited to an amount equivalent to the charge by Odyssey Services to the Customer for the particular Service performed by Odyssey Services during the one (1) month period immediately prior to the date of event, act or omission giving rise to the liability.

> 6.2 In no event shall Odyssey Services be liable for any special, indirect, incidental or consequential damages (including but not limited to loss of profit or other monetary loss; loss or interruption of data or computer time; alteration or erroneous transmission of data; accuracy of data; unauthorized access to or use of data processed or transmitted by, to or through the Service; program errors; or patent, trade secret or copyright infringement) even if Odyssey Services is advised in advance of the possibility of such damages.

Substantive unconscionability exists where "the exchange of obligations [is] so one-sided as to shock the court's conscience." *See Estate of Cohen ex rel. Perelman*, 22 A.3d at 1006; *Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, 357 F. Supp. 2d 788, 801 (D.N.J. 2005). Pharmacy Times argues that the court's conscience should be shocked, because the Odyssey Agreement's provisions "improperly insulate Odyssey from its own illegal conduct" and are impermissibly one-sided. Pharmacy Times also complains that Section 6.1 is illusory, because Odyssey never invoiced Pharmacy Times for its services (instead, SK&A received Odyssey's invoice), which means that Odyssey's liability to Pharmacy Times would be zero. Finally, Pharmacy Times argues that Section 6.2 is unconscionable because the disclaimers are not limited to Odyssey's intentional conduct.

These arguments are presented in an entirely cursory fashion, with little discussion of how to apply any law to the specific facts surrounding the Odyssey Agreement. Instead, Pharmacy Times simply cites a few cases and states that "New Jersey courts have found contracts in violation of public policy" when they include terms like these. (*See* Resp. at 13.) Yet it is Pharmacy Times' ultimate burden to prove unconscionability. *See Allen v. World Inspection Network Int'l, Inc.*, 911 A.2d 484, 492-93 (N.J. Super. App. Div. 2006) ("[P]laintiffs must bear the burden of proving unconscionability, as they would in any other case litigated under general state contract

law."). This response, standing alone, would be inadequate to survive a motion to dismiss.

Further, Odyssey responds that Pharmacy Times is the entity that created the actual content for the fax broadcasts and provided the fax numbers, and that Odyssey merely provided the phone number for customers to opt out and sent the faxes to the numbers provided by Pharmacy Times. If true, Sections 5.1 and 5.2 of the Odyssey Agreement, both of which relate to a customer's "use" of Odyssey's Services, do not attempt to shift onto Pharmacy Times responsibility for Odyssey's allegedly improper actions. Instead, the Odyssey Agreement would only require Pharmacy Times to indemnify Odyssey for Pharmacy Times' own violations of the TCPA or other applicable laws. These provisions are not unconscionable. Odyssey further argues that it is proper to limit damages to the amount charged for its services. The court agrees as a general matter, although the court notes that if for some reason the fact that SK&A paid Odyssey's invoice means that Odyssey could avoid liability entirely, that term could be unconscionable.

But the court need not resolve these issues now, because the court will deny Odyssey's motion to dismiss. Although Odyssey states that Pharmacy Times created the content of the fax broadcasts and provided the fax numbers to Odyssey, the third-party complaint and the Odyssey Agreement paint a different picture—one in which Odyssey provided the opt-out language and oversaw the opt-out process, and SK&A provided the fax numbers. (*See* Third-Party Compl. ¶¶ 15-23, 28-30 (describing SK&A and Odyssey's role in sending the Soma 250 fax ads); Odyssey Agmt. at 1 (agreeing to protect the fax numbers "furnished by SK&A Information Services, Inc.").) If this is true, and these

13

services are the "Services" of Odyssey's that were "used" by Pharmacy Times as set out in the Odyssey Agreement, Pharmacy Times' argument may carry the day. Odyssey would have insulated itself from any and all liability, even though it was the party that drafted the non-compliant opt-out language in the Soma 250 fax ads. Depending upon the particular circumstances in the case, the court might find this type of limit on liability to be unconscionable and against public policy.

In short, as Odyssey itself noted, the Federal Communications Commission has attempted to limit liability only to those fax broadcasters that evidence a "high degree of involvement." Odyssey and Pharmacy Times have presented differing versions of the facts surrounding Odyssey's involvement, and the court is not equipped at this stage in the proceedings to resolve those factual disputes. The motion to dismiss is denied.

### III. CONCLUSION

For the reasons stated above, Odyssey's motion to dismiss Pharmacy Times' third-party complaint is denied. Odyssey shall file an answer to the complaint by September 14, 2012. The parties shall appear for a status hearing on September 18, 2012 at 9:30 a.m.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 16, 2012